MICHAEL C. VAN, ESQ.
Utah Bar Number 4932
CLAY A. ALGER, ESQ.
Utah Bar Number 12426
ROBERT T. SPJUTE, ESQ.
Utah Bar Number 13866
SHUMWAY VAN & HANSEN
8 East Broadway, Suite 550
Salt Lake City, Utah 84111
Phone: (801) 478-8080
Fax: (801) 478-8088
clay@shumwayvan.com
tee@shumwayvan.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MATTHEW T. MGLEJ, an individual. | COMPLAINT |
| Plaintiff, | JURY DEMANDED |
| vs. | |
| GARFIELD COUNTY, a political subdivision of the state of Utah; GARFIELD COUNTY SHERIFF'S OFFICE, a subdivision of the state of Utah; GARFIELD COUNTY JAIL, a subdivision of the state of Utah; OFFICER RAYMOND aka RAYMOND GARDNER, an officer of the Garfield County Sheriff's Office, in both his individual and official capacities; JOHN DOES I-X, in both their individual and official capacities, | Civil No.: 2:13-CV-00713 Judge: Brooke C. Wells |
| Defendants. | |

Plaintiff MATTHEW MGLEJ ("Mr. Mglej" or "Plaintiff"), through his undersigned

counsel from the law firm of Shumway Van and Hansen, hereby complains of the defendants

GARFIELD COUNTY, a political subdivision of the state of Utah; GARFIELD COUNTY SHERIFF'S OFFICE, a subdivision of the state of Utah; GARFIELD COUNTY JAIL, a subdivision of the state of Utah; OFFICER RAYMOND, aka Officer Raymond Gardner, an officer of the Garfield County Sheriff's office ("Officer Raymond") and JOHN DOES I-X, as follows:

## PARTIES

1.     Plaintiff, MATTHEW MGLEJ, is an individual residing in Portland, Oregon and at all times relevant to this case was a resident of the state of Oregon.

2.     Defendant GARFIELD COUNTY is and at all times relevant to this case was a political subdivision of the state of Utah.

3.     Defendant GARFIELD COUNTY SHERIFF'S OFFICE is and at all times relevant to this case was a subdivision of the state of Utah.

4.     Defendant GARFIELD COUNTY JAIL is and at all times relevant to this case was a subdivision of the state of Utah located in Garfield County.

5.     OFFICER RAYMOND, upon information and belief who is also known as Raymond Gardner, is a resident of Boulder City, State of Utah, and at all times relevant to this case was an officer of the Garfield County Sheriff's office.

6.     That the true names or capacities, whether individual, corporate, associate or otherwise of Defendants DOES I-X, inclusive, are unknown to the Plaintiff who therefore sues Defendants by fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is responsible in some manner for the events and happenings herein referred to and caused injury and damages proximately thereby to the Plaintiff

as alleged herein; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said DOE Defendants, inclusive, when the same have been ascertained by Plaintiff together with appropriate charging allegations, and to join such Defendants in this action.

## JURISDICTION & VENUE

7.      The Court has jurisdiction of this action under 42 U.S.C. § 1983 as the Defendants acted under color of state law, and caused Plaintiff, as a citizen of the United States to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

8.      This Court has jurisdiction pursuant to 28 U.S.C § 1331 as this is case is a civil action arising under the Constitution of the United States, as permitted through 42 U.S.C § 1983 and the application of the United States Constitution to the states and their subdivisions through the Fourteenth Amendment to the United States Constitution.

9.      Venue is proper in this Court pursuant to 28 U.S.C § 1331(b) as all defendants reside in the district of Utah and a substantial part of the events or omissions give rise the claims in the Complaint occurred in the judicial district of Utah.

## GENERAL ALLEGATIONS

### *Background*

10.      In or about August 2011, Mr. Mglej arrived in Boulder, Utah ("Boulder") via motorcycle.  Mr. Mglej was traveling from Oregon to Dallas, Texas.

11.      Upon arriving in Boulder, Mr. Mglej's motorcycle began to make unusual noises.

12.      Mr. Mglej's motorcycle was a 2004 Aprilia RSV Tuono R, valued at roughly $15,000.

3

13.     Upon investigation, Mr. Mglej discovered that the motorcycle was low on oil and the pressure switches where turning the motorcycle off to avoid damage.

14.     It was also discovered that one of the tires was worn and dangerously close to rupturing.

15.     Mr. Mglej took his motorcycle to a mechanic's shop in Boulder to resolve the issues with his motorcycle.

16.     The mechanic, whose name was Chuck, worked mostly with agriculture equipment, but was equipped to repair the motorcycle.

17.     The mechanic told Mr. Mglej that the closest town that had the tire he needed was Cedar City and that it would take one week to order and receive the appropriate tire.

18.     The mechanic offered to let Mr. Mglej stay at the mechanic's home while Mr. Mglej waited for the tire to arrive.

19.     Mr. Mglej, while staying in Boulder for one week, became more familiar with Boulder residents and was treated graciously by the residents; specifically, Mr. Mglej was invited to attend dinners, fishing trips and local musical events.

20.     During his time in Boulder, Officer Raymond approached Mr. Mglej, without any reasonable articulable suspicion or probable cause for wrongdoing, and began interrogating Mr. Mglej about his presence in Boulder.

21.     Mr. Mglej chose not to speak with Officer Raymond at that time because he was busy with other activities, but promised to speak with Officer Raymond at a more convenient opportunity.

22.     While waiting for his tire to be delivered, Mr. Mglej continued to ride his motorcycle at below freeway speeds to avoid complications with his tire.

23.     On one such occasion, Mr. Mglej was riding through Boulder and was pulled over by Officer Raymond for allegedly traveling three miles per hour over the speed limit.

24.     Mr. Mglej complied with Officer Raymond's request to show his driver's license and identification and truthfully responded to Officer Raymond's questions.

25.     Mr. Mglej was neither cited nor given a warning for traveling three miles per hour over the speed limit and was allowed to continue on his way.

26.     However, Mr. Mglej had the suspicion that he was being pursued by Officer Raymond for some unknown reason.

27.     On or about August 8, 2011, the tire for Mr. Mglej's motorcycle arrived, and the mechanic installed the tire.

28.     Before leaving Boulder, the mechanic offered to have Mr. Mglej over for dinner before he continued on his journey to Texas.

### *Officer Raymond Arrests and Detains Mr. Mglej and Cruelly Breaks Handcuffs from Mr. Mglej's Writs, Causing Severe Pain and Suffering.*

29.     While at dinner at the mechanic's house on or about August 8, 2011, Officer Raymond arrived in plain clothes and asked to speak with Matthew Mglej.  Officer Raymond knew Mr. Mglej's name, having pulled him over recently, and specifically asked for him by name.

30.     Mr. Mglej went outside to speak with Officer Raymond, and Officer Raymond explained that a large amount of money was missing from the local convenience store

("Convenience Store") and that Mr. Mglej was the last one seen in the Convenience Store prior to the money going missing.

31.     Mr. Mglej agreed to cooperate but requested that he be able to speak to an attorney first.

32.     Mr. Mglej started to call an attorney and Officer Raymond told him to put down the phone or he would wrestle him to the ground.

33.     Mr. Mglej then voluntarily turned around and put his hands behind his back, at which point Officer Raymond arrested Mr. Mglej.

34.     Officer Raymond then pushed Mr. Mglej against a patrol vehicle door and secured the handcuffs extremely tight on Mr. Mglej's wrist and placed him in the patrol car.

35.     Once in the patrol car, Officer Raymond informed Mr. Mglej that he needed to make a stop at his personal residence to change into his police uniform before taking Mr. Mglej to the Garfield County Jail.

36.     Officer Raymond took Mr. Mglej to his personal residence in an isolated location in Garfield County.

37.     Officer Raymond left Mr. Mglej in the patrol car and entered his residence to change into his police uniform.

38.     At this point, Mr. Mglej feared for his life. He was alone and handcuffed in a patrol car in the middle of nowhere.

39.     The handcuffs placed on Mr. Mglej were so tight that they cut off the circulation to Mr. Mglej's hands. While Officer Raymond was changing into his police uniform, Mr. Mglej's hands began to sting, turn purple and eventually became numb.

40.     Upon Officer Raymond's return to the patrol car, Mr. Mglej requested that the handcuffs be loosened before making the three-hour drive to the Garfield County Jail.

41.     Officer Raymond agreed to loosen the handcuffs; however, he could not open the handcuffs with the key.

42.     At this point Mr. Mglej's fear for his life increased.  Mr. Mglej believed he was being toyed with intentionally and was being lured into Officer Raymond's home out of sight of any patrol vehicle dash camera or potential witnesses.

43.     Officer Raymond then took Mr. Mglej into his personal residence's garage where he used several different tools including, but not limited to, a saw, hammer, screw driver, vice grips and wrenches to attempt to break the handcuffs off of Mr. Mglej's wrists.

44.      Each failed attempt to remove the handcuffs only further increased the tightness of the handcuffs due to them becoming more twisted by the efforts to remove them.

45.     During the attempts to break the handcuffs, Mr. Mglej was in tears and often audibility demonstrated the amount of pain he was suffering

46.     Officer Raymond at this point put the handcuffs in a vice grip and attempted to pry the cuffs off with a screw driver.

47.     During this process, the handcuffs were severely bent and thus became much tighter, which in turn severely increased the swelling and pain in Mr. Mglej's wrist to the point that they felt like they were on fire.

48.     After causing this extreme pain, Officer Raymond eventually removed one handcuff from Mr. Mglej's right hand and continued to attempt to pry the left handcuff off.

49.     Officer Raymond, with extreme difficulty, was unable to pry the second handcuff off of Mr. Mglej's left hand and ceased efforts due to how deformed the handcuffs had become.

50.     After searching around his personal residence's garage, Officer Raymond found another large screw driver and proceeded to pry the handcuffs off, eventually breaking the handcuffs from both wrists.

51.     Officer Raymond then put a new set of handcuffs on Mr. Mglej's wrists, which caused Mr. Mglej more pain because of the swelling caused by the first handcuffs and subsequent cruel and unusual attempts to remove the first set of handcuffs.

52.     Officer Raymond's mistreatment of Mr. Mglej caused severe nerve damage to his wrists.

53.     Officer Raymond, now in uniform, placed Mr. Mglej in the front seat of the patrol vehicle and began the drive to Garfield County Jail.

***Officer Raymond Unlawfully Detains Mr. Mglej and Without Cause Takes Him to the Garfield County Jail.***

54.     About thirty minutes into the drive, Officer Raymond received a phone call from the Convenience Store. The Convenience Store employee informed Officer Raymond that they had miscounted the money in the cash register and nothing was actually missing from the store.

55.     Despite this exonerating information, Officer Raymond kept driving.

56.     Mr. Mglej's anxiety levels began to increase and he began having trouble breathing and started experiencing panic attacks. Mr. Mglej feared for his life now that he had been cleared of wrongdoing and the Officer was still taking him somewhere.

57.     Officer Raymond eventually arrived at the Garfield County Jail.

8

58.     The Officers at Garfield County Jail ("Doe Officers") asked Officer Raymond on what charges Mr. Mglej was being held, to which Officer Raymond responded, "I don't know; let me look in the book and I'll find something."

59.     On or about August 10, 2011, Mr. Mglej was wrongfully charged with Failure to Disclose Identity, a Class B Misdemeanor, and Obstruction of Justice – False Information, a Class B Misdemeanor.

### Mr. Mglej is Mistreated and Unlawfully Detained in the Garfield County Jail

60.     Mr. Mglej demanded that he be able to talk to an attorney. In response, Mr. Mglej was told by the Doe Officers that he could not talk to an attorney and that such things only happened in the movies.

61.     Again, Mr. Mglej requested that he be able to talk to a lawyer and call his family. His requests were denied and he was not allowed to call anyone, at which point other inmates began chanting about wanting to talk to a lawyer and making threatening statements to Mr. Mglej.

62.     Mr. Mglej has a severe allergy to dairy products, which he informed the Doe Officers of.  Nonetheless, his first meal at the jail was a sandwich comprised only of cheese and mayo. Mr. Mglej was sarcastically informed that this meal was specially made for him because he has such good manners. The Doe Officers continued to bring Mr. Mglej meals comprised primarily of dairy products.

63.     Mr. Mglej was held in jail for about two days before appearing before Judge Doe at the Garfield County Justice Court.

64.     Mr. Mglej informed Judge Doe of what he had suffered at the hands of Officer Raymond and the Doe Officers. The judge did not believe Mr. Mglej's story and yelled at him, accusing Mr. Mglej of lying and making up the whole story.

65.     Later on, Judge Doe was compelled to recuse himself from the case due to his comments to Mr. Mglej.

66.      Despite Judge Doe's unusual behavior, Mr. Mglej was allowed bail at $1,000.00 and ordered that he be allowed to make a phone call.

67.     Mr. Mglej was taken back to jail where he attempted to post bail; however, after requests to post bail, no one attended to him and Mr. Mglej was unable to post bail despite his waiting to do so for several hours.

68.     Mr. Mglej also attempted to make a phone call as allowed by Judge Doe.

69.     The Doe Officers finally allowed Mr. Mglej to make a phone call as ordered by Judge Doe.

70.     Mr. Mglej called his mother and said "Hi Mom I'm In Jail...", at which point Officer Doe took the phone and hung it up and told him that's all he gets.

71.     Mr. Mglej was given no other opportunities to make a phone call while he was incarcerated in Garfield County Jail.

72.     On August 11, 2011, Mr. Mglej's debit card was charged $1,000.00 for "Justice Court Fines" as well as two $5.95 convenience fees.

73.     Although Mr. Mglej's bank account had already been debited to pay his bail, he remained in jail for two more days.

74.     During his days in jail, Mr. Mglej was told by Doe Officers that they were teaching him a lesson in patience.

75.     Doe Officers would continually inform Mr. Mglej that they were "sending somebody down" to assist him with bail; however, either no one would come to assist him, or at other times a Doe officer would inform him that Mr. Mglej did not have the money to post bail and would walk off.

76.     Plaintiff was placed in a cell with another inmate who upon information and belief suffered from schizophrenia and alcoholism.

77.     The Does Officers refused to give the schizophrenic inmate his medication. As a result, the schizophrenic inmate became paranoid and began behaving erratically and aggressively toward Mr. Mglej.

78.     Mr. Mglej feared for his life from the taunting of the inmates and the behavior of the schizophrenic inmate which exhibited aggressive behavior.

79.     Mr. Mglej would not have been forced to share a cell with the schizophrenic inmate had been release on August 11, 2011 when his card was debited to pay his bail.

80.     As a result of having to share a cell with the schizophrenic inmate, Mr. Mglej suffered intense mental and emotional anguish.

81.     During Mr. Mglej's entire stay at the jail, he was treated very poorly and was ridiculed by both the Doe Officers and other inmates for trying to assert his rights. As a result of the poor treatment, Mr. Mglej's diagnosed Post Traumatic Stress Disorder was aggravated.

82.     While still in custody, Mr. Mglej was brought before Judge Bulkley on August 16, 2011.

83.     Mr. Mglej was then returned to Garfield County Jail.

84.     On August 17, 2011, one week after Judge Doe ordered the bail amount, and at least six days after Mr. Mglej's debit card was debited $1,000, bail was finally posted on the court's docket and Mr. Mglej was released from Garfield County Jail.

85.     Mr. Mglej, without any means of transportation, was release from Garfield County Jail and was forced to walk and hitch hike the nearly 100 miles back to Boulder, Utah in the extreme heat of summer.

86.     Upon arriving in Boulder, adding insult to injury, Mr. Mglej discovered that his motorcycle was missing.

87.     Plaintiff located the mechanic named Chuck and inquired as to the location of his motorcycle. The mechanic informed him that some people had taken his motorcycle for joy rides.

88.     When Plaintiff recovered his motorcycle, he discovered that it had been severely damaged and many of his personal belongings, which were on the motorcycle, had been stolen, including a digital camera, GPS, and video camera.

89.     On September 8, 2011, Mr Mglej appeared in court and all charges against him were dismissed.

## FIRST CAUSE OF ACTION
*(Unlawful Arrest and Detention under 42 U.S.C. 1983 and the Fourth Amendment of the United States Constitution as against Garfield County, Garfield County Sheriff's Office and Officer Raymond)*

90.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

91.     Plaintiff was handcuffed and arrested by Officer Raymond based on information from the local convenience store that money was missing from their cash register and Plaintiff was the last one seen in the convenience store.

92.     Officer Raymond was an authorized agent of Garfield County, and Garfield County Sheriff's Office acting under color of state law.

93.     Officer Raymond did not have a warrant to arrest Plaintiff.

94.     Officer Raymond handcuffed Plaintiff and placed him in a patrol car showing that his actions were under color of state law.

95.     Officer Raymond took Plaintiff to the officer's home to put on his police uniform also showing that his actions were under color of state law.

96.     Upon learning that the convenience store had miscounted the money and that nothing was missing, Officer Raymond continued to detain Plaintiff.

97.     Officer Raymond was aware that no crime had taken place but continued to detain Plaintiff once any purported supporting probable cause had been extinguished.

98.     Officer Raymond took Plaintiff to the Garfield County Jail in handcuffs despite the confirmation that Officer Raymond had received that no crime had actually occurred.

99.     Officer Raymond's actions were based on the practices and customs of the Garfield County Sheriff's Office.

100.    Plaintiff enjoyed the constitutional right to be free from unreasonable searches and seizures.

101.    As a result of Officer Raymond's unlawful search and seizure, he caused a violation of Plaintiff's constitutional rights.

102.    Officer Raymond intentionally and with malice violated Plaintiff's federally protected rights in violation of 42 U.S.C. § 1983.

103.    As a result of Officer Raymond's actions, Plaintiff suffered several days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

104.    As a result of Officer Raymond's actions, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential, and punitive damages in an amount of no less than $250,000.00.

105.    Plaintiff is also entitled to attorney's fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
*(Use of Excessive Force under 42 U.S.C. 1983 and the Fourth Amendment of the United States Constitution as against Garfield County, Garfield County Sheriff's Office and Officer Raymond)*

106.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

107.    Officer Raymond arrested and handcuffed Plaintiff as an authorized agent of Garfield County, and Garfield County Sheriff's Office, thus acting under color of state law.

108.    Officer Raymond put handcuffs on Plaintiff and secured them too tightly causing Plaintiff physical pain and loss of feeling in Plaintiff's hands.

109.    Officer Raymond then took Plaintiff to the officer's personal home so that he could change into his police uniform, showing he was acting under color of state law.

110.    The actions taken to pry and break the handcuffs from Plaintiff's wrists caused Plaintiff extreme physical pain, leaving his wrists red and swallow, and resulting in severe nerve damage.

111.    The removal of the handcuffs from Plaintiff's wrists caused the detention and arrest of Plaintiff to be unnecessary, unreasonable, or excessively violent.

112.    Officer Raymond exceeded the degree of force which a reasonable and prudent law enforcement officer would have applied in making the detention or arrest under the same circumstances.

113.    The alleged crime charged against Plaintiff was not severe, Plaintiff posed no immediate threat to Officer Raymond, and Plaintiff did not resist arrest, or detention and Plaintiff did not attempt to evade arrest by flight.

114.    Plaintiff cooperated with Officer Raymond and the Doe Officers of the Garfield County Jail and there was no need to secure the handcuffs so tightly or to remove them in such an unnecessary manner.

115.    Officer Raymond's actions were consistent with the practices and customs of the Garfield County Sheriff's Office, which is why he felt such actions could be taken.

116.    As a result of Officer Raymond's actions, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential and punitive damages in an amount of no less than $250,000.00.

117.    Plaintiff is also entitled to attorney's fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

///

## THIRD CAUSE OF ACTION

*(Malicious Prosecution under 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments of the United States Constitution as against Garfield County, Garfield County Sheriff's Office, and Officer Raymond)*

118.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

119.    Officer Raymond, acting as an agent of Garfield County, and the Garfield County Sheriff's Office, and under color of state law, arrested and booked Plaintiff into jail charging Plaintiff with Failure to Disclose Identity, and Obstruction of Justice – False Information, thus commencing a criminal proceeding against Plaintiff.

120.    The charges against Plaintiff were dismissed resulting in a termination of the action in favor of Plaintiff because he did not fail to disclose his identity, as he had provided such information to Officer Raymond several days before his arrest and Plaintiff did not provide false information.

121.    The criminal proceeding and confinement of Plaintiff was initiated maliciously because there was no evidence to support Plaintiff's detention.

122.    As a result of Defendants' actions, Plaintiff suffered several days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

123.    As a result of Officer Raymond's actions, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential and punitive damages in an amount of no less than $250,000.00.

124.    Plaintiff is also entitled to attorney's fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## **FOURTH CAUSE OF ACTION**

*(Denial of Bail under 42 U.S.C. 1983 and the Eighth Amendment of the United States Constitution as against Garfield County, Garfield County Sheriff's Office, Garfield County Jail and Doe Officers)*

125.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

126.    Plaintiff was allowed to post bail by Judge Doe.

127.    Plaintiff's debit card was debited $1,000.00 to pay for his bail on August 11, 2011.

128.    Although Plaintiff posted bail, he was not released from the Garfield County Jail for several days because, as he was told by the Doe Officers of the Garfield County Jail, he needed to be taught a lesson in patience.

129.    Doe Officers were agents of Garfield County, Garfield County Sheriff's Office, and Garfield County Jail acting under color of state law.

130.    Doe Officers acted according to the practices and customs of the Garfield County Sheriff's Office and Garfield County Jail, in that they had no controls or measures to ensure that a prisoner who could pay bail would be timely released.

131.    Doe Officers acted maliciously in an effort to dispossess Plaintiff of his constitutional rights.

132.    Furthermore, Plaintiff did not pose a flight risk as he was without any means of transportation and was located in a jail in a remote city about 100 miles from his motorcycle.

133.    Plaintiff had never before tried to escape or flee, but had been cooperative.

134.     As a result of Defendants' actions, Plaintiff suffered several additional days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

135.     As a result of the actions taken by the Doe Officers of Garfield County Jail, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential and punitive damages in an amount of no less than $250,000.00.

136.     Plaintiff is also entitled to attorney's fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

### FIFTH CAUSE OF ACTION
*(Cruel and Unusual Punishment under 42 U.S.C. 1983 and the Eighth Amendment of the United States Constitution as against Garfield County, Garfield County Sheriff's Office, Garfield County Jail, Officer Raymond and Doe Officers)*

137.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

138.     Plaintiff was caused severe pain and suffered nerve damage to his wrists due to Officer Raymond placing handcuffs on Plaintiff too tightly and then using several tools to tighten the handcuffs on Plaintiff's wrists.

139.     Plaintiff informed the Doe Officers in the Garfield County Jail that he was allergic to dairy products. The Doe Officers, in spite of Plaintiff's informing them of his allergy, gave him food consisting mainly of dairy products.

140.     Plaintiff was forced to share a jail cell with a schizophrenic inmate who had not been allowed to take his medication.

141.     Plaintiff was not allowed to call an attorney.

142.    Plaintiff was not allowed to call his family for several days, and when he was finally allowed to call, the call was cut short by a Doe Officer from the Garfield County Jail who hung up the phone before he could explain to his mother where he was and why he was there.

143.    Plaintiff was not allowed to make another phone call during the remainder of his imprisonment in the Garfield County Jail.

144.    Plaintiff was held in jail for several days after he had paid the full amount of his bail.

145.    Plaintiff was taunted and ridiculed by the Doe Officers and by other inmates, thereby aggravating his Post Traumatic Stress Disorder.

146.    Officer Raymond was an agent of Garfield County and Garfield County Sheriff's Office when he caused damage to Plaintiff while acting under color of state law.

147.    The Doe Officers were agents of Garfield County, Garfield County Sheriff's Office, and Garfield County Jail and they damaged Plaintiff while acting under color of state law.

148.    The treatment of Plaintiff by Officer Raymond and the Doe Officers were consistent with the customs and practices of the Garfield County Sheriff's Office and the Garfield County Jail.

149.    As a result of the actions taken by Officer Raymond and the Doe Officers of Garfield County Jail, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential and punitive damages in an amount of no less than $250,000.00.

150.    Plaintiff is also entitled to attorney's fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

### SIXTH CAUSE OF ACTION

*(Unlawful Arrest and Detention under the Utah Constitution Article I, Section 14 as against Garfield County, Garfield County Sheriff's Office and Officer Raymond)*

151.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

152.     Plaintiff was handcuffed and arrested by Officer Raymond based on information from the local convenience store that money was missing from their cash register and Plaintiff was the last one seen in the convenience store.

153.    Officer Raymond was an authorized agent of Garfield County, and Garfield County Sheriff's Office.

154.    Officer Raymond did not have a warrant to arrest Plaintiff.

155.    Officer Raymond handcuffed Plaintiff and placed him in a patrol car.

156.    Officer Raymond took Plaintiff to the officer's home to put on his police uniform.

157.    Upon learning that the convenience store had miscounted the money and that nothing was missing, Officer Raymond continued to detain Plaintiff.

158.    Officer Raymond was aware that no crime had taken place but continued to detain Plaintiff once any purported supporting probable cause had been extinguished.

159.    Officer Raymond took Plaintiff to the Garfield County Jail in handcuffs despite the confirmation that Officer Raymond had received that no crime had actually occurred.

160.    Officer Raymond's actions were based on the practices and customs of the Garfield County Sheriff's Office.

161.    Plaintiff enjoyed the state constitutional right to be free from unreasonable searches and seizures.

162.    As a result of Officer Raymond's unlawful search and seizure, he caused a violation of Plaintiff's constitutional rights.

163.    Officer Raymond acted maliciously in an effort to dispossess Plaintiff of his constitutional rights.

164.    Article I, Section 14 of the Utah Constitution is self-executing.

165.    Officer Raymond's actions caused Plaintiff to suffer a flagrant violation of his constitutional rights because Plaintiff's right against unlawful arrest and detention were sufficiently clear that a reasonable official would understand that Officer Raymond's actions violated Plaintiff's rights.

166.    Existing remedies besides money damages do not redress the injuries that Plaintiff has suffered.

167.    Equitable relief, such as an injunction, was and is wholly inadequate to protect Plaintiff's rights or to redress his injuries.

168.    As a result of Officer Raymond's actions, Plaintiff suffered several days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

169.    As a result of Officer Raymond's actions, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential, and punitive damages in an amount of no less than $250,000.00.

170.    Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

///

21

**SEVENTH CAUSE OF ACTION**

*(Use of Excessive Force under the Utah Constitution Article I, Section 14 as against Garfield County, Garfield County Sheriff's Office and Officer Raymond)*

171.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

172.    Officer Raymond arrested and handcuffed Plaintiff as an authorized agent of Garfield County, and Garfield County Sheriff's Office.

173.    Officer Raymond put handcuffs on Plaintiff and secured them too tightly causing Plaintiff physical pain and loss of feeling in Plaintiff's hands.

174.    Officer Raymond then took Plaintiff to the officer's personal home so that he could change into his police uniform.

175.    The actions taken to pry and break the handcuffs from Plaintiff's wrists caused Plaintiff extreme physical pain, leaving his wrists red and swallow, and resulting in severe nerve damage.

176.    The removal of the handcuffs from Plaintiff's wrists caused the detention and arrest of Plaintiff to be unnecessary, unreasonable, or excessively violent.

177.    Officer Raymond exceeded the degree of force which a reasonable and prudent law enforcement officer would have applied in making the detention or arrest under the same circumstances.

178.    The alleged crime charged against Plaintiff was not severe, Plaintiff posed no immediate threat to Officer Raymond, and Plaintiff did not resist arrest, or detention and Plaintiff did not attempt to evade arrest by flight.

179.    Plaintiff cooperated with Officer Raymond and the Doe Officers of the Garfield County Jail and there was no need to secure the handcuffs so tightly or to remove them in such an unnecessary manner.

180.    Officer Raymond's actions were consistent with the practices and customs of the Garfield County Sheriff's Office, which is why he felt such actions could be taken.

181.    Officer Raymond acted maliciously in an effort to dispossess Plaintiff of his constitutional rights.

182.    Article I, Section 14 of the Utah Constitution is self-executing.

183.    Officer Raymond's actions caused Plaintiff to suffer a flagrant violation of his constitutional rights because Plaintiff's right to be free from excessive force during an arrest was sufficiently clear that a reasonable official would understand that Officer Raymond's actions violated Plaintiff's rights.

184.    Existing remedies besides money damages do not redress the injuries that Plaintiff has suffered.

185.    Equitable relief, such as an injunction, was and is wholly inadequate to protect Plaintiff's rights or to redress his injuries

186.    As a result of Officer Raymond's actions, Plaintiff suffered several days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

187.    As a result of Officer Raymond's actions, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential, and punitive damages in an amount of no less than $250,000.00.

188.     Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

### EIGHTH CAUSE OF ACTION
*(Malicious Prosecution under the Utah Constitution Article I, Section 7, and Section 14 as against Garfield County, Garfield County Sheriff's Office, and Officer Raymond)*

189.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

190.     Officer Raymond, acting as an agent of Garfield County, and the Garfield County Sheriff's Office, arrested and booked Plaintiff into jail charging Plaintiff with Failure to Disclose Identity, and Obstruction of Justice – False Information, thus commencing a criminal proceeding against Plaintiff.

191.     The charges against Plaintiff were dismissed resulting in a termination of the action in favor of Plaintiff because he did not fail to disclose his identity, as he had provided such information to Officer Raymond several days before his arrest and Plaintiff did not provide false information.

192.     The criminal proceeding and confinement of Plaintiff was initiated maliciously because there was no evidence to support Plaintiff's detention.

193.     Article I, Sections 7 and 14 of the Utah Constitution are self-executing.

194.     Officer Raymond's actions caused Plaintiff to suffer a flagrant violation of his constitutional rights because Plaintiff's right against malicious prosecution was sufficiently clear that a reasonable official would understand that Officer Raymond's actions violated Plaintiff's rights.

195.     Existing remedies besides money damages do not redress the injuries that Plaintiff has suffered.

196.     Equitable relief, such as an injunction, was and is wholly inadequate to protect Plaintiff's rights or to redress his injuries.

197.     As a result of Officer Raymond's actions, Plaintiff suffered several days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

198.     As a result of Officer Raymond's actions, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential, and punitive damages in an amount of no less than $250,000.00.

199.     Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

### NINTH CAUSE OF ACTION
*(Denial of Bail under the Utah Constitution Article I, Section 9 as against Garfield County, Garfield County Sheriff's Office, Garfield County Jail, and Doe Officers)*

200.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

201.     Plaintiff was allowed to post bail by Judge Doe.

202.     Plaintiff's debit card was debited $1,000.00 to pay for his bail on August 11, 2011.

203.     Although Plaintiff posted bail, he was not released from the Garfield County Jail for several days because, as he was told by the Doe Officers of the Garfield County Jail, he needed to be taught a lesson in patience.

204.     Doe Officers were agents of Garfield County, Garfield County Sheriff's Office, and Garfield County Jail.

205.     Doe Officers acted according to the practices and customs of the Garfield County Sheriff's Office and Garfield County Jail, in that they had no controls or measures to ensure that a prisoner who could pay bail would be timely released.

206.     Doe Officers acted maliciously in an effort to dispossess Plaintiff of his constitutional rights.

207.     Furthermore, Plaintiff did not pose a flight risk as he was without any means of transportation and was located in a jail in a remote city about 100 miles from his motorcycle.

208.     Plaintiff had never before tried to escape or flee, but had been cooperative.

209.     Article I, Section 9 of the Utah Constitution is self-executing.

210.     The Doe Officers' actions caused Plaintiff to suffer a flagrant violation of his constitutional rights because Plaintiff's right against denial of bail was sufficiently clear that a reasonable official would understand that the Doe Officers' actions violated Plaintiff's rights.

211.     Existing remedies besides money damages do not redress the injuries that Plaintiff has suffered.

212.     Equitable relief, such as an injunction, was and is wholly inadequate to protect Plaintiff's rights or to redress his injuries.

213.     As a result of the Doe Officers' actions, Plaintiff suffered several days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

26

214.    As a result of the Doe Officers' actions, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential, and punitive damages in an amount of no less than $250,000.00.

215.    Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

### TENTH CAUSE OF ACTION
*(Cruel and Unusual Punishment under the Utah Constitution Article I, Section 9 as against Garfield County, Garfield County Sheriff's Office, Garfield County Jail, Officer Raymond and Doe Officers)*

216.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

217.    Plaintiff was caused severe pain and suffered nerve damage to his wrists due to Officer Raymond placing handcuffs on Plaintiff too tightly and then using several tools to tighten the handcuffs on Plaintiff's wrists.

218.    Plaintiff informed the Doe Officer in the Garfield County Jail that he was allergic to dairy products. The Doe Officers, in spite of Plaintiff's informing them of his allergy, gave him food consisting mainly of dairy products.

219.    Plaintiff was forced to share a jail cell with a schizophrenic inmate who had not been allowed to take his medication.

220.    Plaintiff was not allowed to call an attorney.

221.    Plaintiff was not allowed to call his family for several days, and when he was finally allowed to call, the call was cut short by a Doe Officer from the Garfield County Jail who hung up the phone before he could explain to his mother where he was and why he was there.

222.    Plaintiff was not allowed to make another phone call during the remainder of his imprisonment in the Garfield County Jail.

223.    Plaintiff was held in jail for several days after he had paid the full amount of his bail.

224.    Plaintiff was taunted and ridiculed by the Doe Officers and by other inmates, thereby aggravating his Post Traumatic Stress Disorder.

225.    Officer Raymond was an agent of Garfield County and Garfield County Sheriff's Office when he caused damage to Plaintiff while acting under color of state law.

226.    The Doe Officers were agents of Garfield County, Garfield County Sheriff's Office, and Garfield County Jail and they damaged Plaintiff while acting under color of state law.

227.    The treatment of Plaintiff by Officer Raymond and the Doe Officers were consistent with the customs and practices of the Garfield County Sheriff's Office and the Garfield County Jail.

228.    Officer Raymond and the Doe Officers acted maliciously in an effort to dispossess Plaintiff of his constitutional rights.

229.    Article I, Section 9 of the Utah Constitution is self-executing.

230.    Officer Raymond and the Doe Officers' actions caused Plaintiff to suffer a flagrant violation of his constitutional rights because Plaintiff's right against cruel and unusual punishment was sufficiently clear that a reasonable official would understand that Officer Raymond and the Doe Officer's actions violated Plaintiff's rights.

231.    Existing remedies besides money damages do not redress the injuries that Plaintiff has suffered.

232.    Equitable relief, such as an injunction, was and is wholly inadequate to protect Plaintiff's rights or to redress his injuries.

233.    As a result of Officer Raymond and the Doe Officers' actions, Plaintiff suffered several days of poor treatment in the Garfield County Jail. In Plaintiff's absence, his motorcycle was severely damaged and his belongings were stolen.

234.    As a result of the actions taken by Officer Raymond and the Doe Officers, Plaintiff was damaged and entitled to recover general, compensatory, actual, consequential, and punitive damages in an amount of no less than $250,000.00.

235.    Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

**ELEVENTH CAUSE OF ACTION**
*(Battery as to Officer Raymond)*

236.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

237.    Officer Raymond took Plaintiff to his personal residence and could not remove handcuffs from Plaintiff's writs.

238.    Officer Raymond intended to causes harmful or offensive contact with Plaintiff when we used tools to pry the handcuffs from Plaintiff's writs.

239.    Officer Raymond made harmful contact with Plaintiff when he forcibly broke the handcuffs from Plaintiff's writs using a screwdriver and other tools which caused Plaintiff extreme pain and nerve damage.

240.     As a result of the actions taken by Officer Raymond, Plaintiff was damaged and entitled to recover damages in an amount of no less than $250,000.00.

241.     Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

### TWELFTH CAUSE OF ACTION
*(Assault as to Officer Raymond)*

242.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

243.     Officer Raymond took Plaintiff to his personal residence and could not remove handcuffs from Plaintiff's writs.

244.     Because of the remote nature of Officer Raymond's home and the state of confinement he was in Plaintiff feared for his life.

245.     Officer Raymond acted intending to cause harmful or offensive contact with Plaintiff, or imminent apprehension of such contact.

246.     As a result of Officer Raymond's actions, Plaintiff was thereby put in imminent apprehension of harmful or offensive contact.

247.     As a result of the actions taken by Officer Raymond, Plaintiff was damaged and entitled to recover damages in an amount of no less than $250,000.00.

248.     Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

///

///

///

## THIRTEENTH CAUSE OF ACTION
### *(Negligence as to Officer Raymond)*

249.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully set forth herein.

250.    Officer Raymond had a duty to exercise reasonable care while Plaintiff was in his custody and control.

251.    Officer Raymond placed handcuffs on Plaintiff's wrists that were too tight and that he did not have a functioning key for.

252.    Officer Raymond's failure to properly use handcuffs was the legal and proximate cause that Plaintiff was injured by the removal of the handcuffs from Plaintiff's wrists resulting in severe pain and nerve damage.

253.    As a result of the actions taken by Officer Raymond, Plaintiff was damaged and entitled to recover damages in an amount of no less than $250,000.00.

254.    Plaintiff has been forced to retain counsel and has incurred attorney fees and is entitled to reimbursement for such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1.    For an award of general, compensatory, actual, consequential and punitive damages in an amount of no less than $250,000.00;

2.    For an award of attorneys' fees, and expert fees and costs of suit pursuant to Utah law 42 U.S.C. § 1983,  42 U.S.C. § 1988 and Rule 54 of the Federal Rules of Civil Procedure;

3.    For punitive damages based on Defendants intentional misconduct;

4.    For such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this matter on all triable issues.

DATED this <u>26th</u> day of July, 2013.

**SHUMWAY VAN & HANSEN**

*/s/ Clay A. Alger*

_____

MICHAEL C. VAN, ESQ.
CLAY A. ALGER, ESQ.
ROBERT T. SPJUTE, ESQ.
*Attorneys for Plaintiff*